COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                NO.
 2-08-294-CR

 

 

SUSAN LEA BRYANT                                                                        APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

            FROM
COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I.  INTRODUCTION

Appellant
Susan Lea Bryant challenges her conviction for driving while intoxicated.  In three issues, Bryant contends the trial
court erred by denying her motion to suppress the results of her horizontal
gaze nystagmus (HGN) testCadministered while she was
seatedCand
that the evidence was legally and factually insufficient to support Bryant=s
conviction.  We will affirm.

II.  BACKGROUND

A.
Factual Background








At
approximately 11:30 p.m., Denton Police Officer Jason Snailer responded to a
dispatch call regarding a specific vehicle[1]
traveling southbound on Interstate 35. 
After spotting the vehicle, Officer Snailer followed it and observed it
swerve onto the right shoulder at least twice and almost hit a bridge
guardrail.  Because of the heavy rain
that evening, Officer Snailer testified that he considered such driving to be
dangerous and activated his overhead lights to stop the driver.  As the vehicle pulled over, it cut off
another car entering the highway from an entrance ramp.[2]


Because
the vehicle pulled to the side of the highway, Officer Snailer contacted the
driver, Bryant, through the passenger side window.  Officer Snailer testified that Bryant could
not locate her driver=s license or insurance and
told him she was driving back from Norman, Oklahoma.  Officer Snailer said he did not smell any
alcohol, but that he never leaned into the vehicle and was too far from Bryant
to smell anything when he spoke with her.








Shortly
after Officer Snailer stopped Bryant, Denton Police Officer Lisa Martin arrived
on the scene in response to the dispatch call. 
After speaking with Officer Snailer about his observations of Bryant=s
vehicle on the highway, Officer Martin leaned in Bryant=s
passenger window to speak with Bryant because it was raining heavily and the
highway noise was loud.  Officer Martin
said that when she first walked up to Bryant=s
car, Bryant was continuing to search for her license.  Officer Martin testified that she noticed a
moderate odor of alcohol while talking with Bryant and noticed that Bryant wore
a paper wristband on her right wrist that indicates a person is over age 21 in
a bar or casino.  Officer Martin also
testified that Bryant had glassy eyes and that her speech was a little slurred.

Officer
Martin asked Bryant how many drinks it took for her to feel the effects of alcohol.  Bryant replied that she did not know, that
she did not drink very often, but that she had two glasses of wine at a casino
about three hours before being stopped. 
Bryant recited her name, age, date of birth, and driver=s
license number without any difficulty. 
Bryant denied feeling any effects of alcohol and said she was just
tired.  Officer Martin also testified
that Bryant admitted to taking Effexor, an antidepressant, that day and that
the medication=s
label warned not to consume alcohol while taking the medication. 








Officer
Martin explained that she conducted the first of three standardized field
sobriety tests, the HGN, while Bryant was seated in the car because it was
raining heavily, Bryant appeared elderly, and she did not want to ask Bryant to
step out in the rain if Bryant was not intoxicated.  Officer Martin explained that the HGN is a
valid way to help determine if a person is intoxicated by observing a certain
number of clues as a person=s
eyes track a stimulus.  Officer Martin
said she observed six out of six clues in Bryant=s
eyes, that it was likely Bryant was intoxicated, and that she needed to further
investigate whether Bryant was intoxicated.

Because
Officer Snailer=s patrol car was directly
behind Bryant=s
car, Officer Martin removed the videotape from her car=s
camera and placed it in Officer Snailer=s
camera so that they could record the rest of the field sobriety tests.  By this time the rain had subsided, and
Officer Martin asked Bryant to step out and move to the rear of Bryant=s
car.  Officer Martin testified she asked
Bryant to stand in a certain spot and Bryant stumbled; but Officer Martin did
not recall seeing anything on which Bryant might have tripped.[3]  As Officer Martin began to explain the next
standardized field sobriety test, Bryant responded that she did not want to do
any field sobriety tests.  Officer Martin
testified she inquired a second time if Bryant would like to try and Bryant
refused.  At that point, Officer Martin
placed Bryant under arrest because she believed Bryant was intoxicated from
alcohol or medication or both.








After
reading Bryant her statutory warnings, Officer Martin explained that she asked
for a blood sample because she knew Bryant had consumed alcohol and taken
medication, Aso
[with] a blood specimen you can get both, and a breath specimen you can only
get the alcohol.@  Bryant declined to give a blood specimen and
the record does not reflect an attempt by Officer Martin to obtain a search
warrant for such a specimen. 

B.
Procedural Background

Bryant
was charged by indictment with her second offense of driving while
intoxicated.  Bryant filed a motion to
suppress evidence obtained as a result of her detention and arrest.  At the pre-trial hearing, Bryant sought to
suppress the results of the HGN test because it was not administered in a
standardized manner.  After permitting
the parties to submit briefs on whether the HGN results were admissible, the
trial court denied Bryant=s motion.  At trial, Bryant entered a plea of not guilty
to the offense, but entered a plea of true to the enhancement paragraph
alleging that she had been convicted of the previous misdemeanor of driving
while intoxicated.  A jury found Bryant
guilty. The trial court assessed punishment at 365 days in jail with a $700
fine, but suspended the jail sentence and placed her on community supervision
for eighteen months.  Bryant timely filed
a notice of appeal.

III.  ISSUES

Bryant
raises three points:  (1) the trial court
erred by denying her motion to suppress and by allowing Officer Martin=s
testimony regarding her results of the HGN testing; (2) the evidence is legally
insufficient to support Bryant=s
conviction for driving while intoxicated; and (3) the evidence is factually
insufficient.  We will therefore apply
the abuse of discretion standard of review and the legal and factual
sufficiency standards of review set forth below where they are applicable.








IV.  ANALYSIS

A.
Motion to Suppress

 In her first issue, Bryant contends the trial
court erred by denying her motion to suppress evidence of the HGN results
because Officer Martin did not administer the test in accordance with the
National Highway and Transportation Safety Administration (NHTSA) protocol as
outlined in the NHTSA instructor=s
manual.  Specifically, Bryant contends
that conducting an HGN test on a seated individual is an invalid technique and
that Officer Martin did not properly administer the HGN test because she did
not ask Bryant to stand with her feet together and with her hands at her side.

1.  Abuse of Discretion Standard








We
review a trial court=s ruling on a motion to
suppress under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and of the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25
(Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09
(Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53
(Tex. Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated
another way, when reviewing the trial court=s
ruling on a motion to suppress, we must view the evidence in the light most
favorable to the trial court=s
ruling.  Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

When
the record is silent on the reasons for the trial court=s
ruling, or when there are no explicit fact findings and neither party timely
requested findings and conclusions from the trial court, we imply the necessary
fact findings that would support the trial court=s
ruling if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo
unless the implied fact findings supported by the record are also dispositive
of the legal ruling.  Kelly, 204
S.W.3d at 819.








We
must uphold the trial court=s
ruling if it is supported by the record and correct under any theory of law
applicable to the case even if the trial court gave the wrong reason for its
ruling.  State v. Stevens, 235
S.W.3d 736, 740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).

2.  Application of Law to Facts

In
Emerson v. State, the court of criminal appeals examined the underlying
scientific theory of HGN testing and determined that the science is valid.  880 S.W.2d 759, 763 (Tex. Crim. App.
1994).  Nystagmus is an involuntary rapid
oscillation of the eyes in a horizontal, vertical, or rotary direction.  Id. at 765.  Horizontal gaze nystagmus refers to the
inability of the eyes to smoothly follow an object moving horizontally across
the field of vision, particularly when the object is held at an angle of forty‑five
degrees or more to the side.  See
Webster v. State, 26 S.W.3d 717, 719 n.1 (Tex. App.CWaco
2000, pet. ref'd).  Consumption of
alcohol exaggerates nystagmus to the degree it can be observed by the naked
eye.  Emerson, 880 S.W.2d at
766.  In determining whether a person=s
performance of the HGN test suggests intoxication, an officer must look for the
following clues in each eye: (1) the lack of smooth pursuit, (2) distinct
nystagmus at maximum deviation, and (3) the onset of nystagmus prior to 45
degrees.  McRae v. State, 152
S.W.3d 739, 743 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d).








The Emerson
court also determined that the HGN testing technique in the NHTSA manual is
valid.  See Emerson, 880 S.W.2d at
768B69.  The HGN technique is applied properly when
the officer follows the standardized procedures outlined in the DWI Detection
Manual published by NHTSA.  See id.  

Bryant
contends that the variation from the standardized procedures, because Officer
Martin conducted the HGN test with Bryant seated instead of standing, led to
unreliable results and an improperly applied technique. However, Officer Martin
testified that she complied with the published procedure. 

Officer
Martin was trained according to the standards in the NHTSA manual, was
certified to perform the HGN test, served as field training officer since 2001,
trained every recruit in the Denton Police Department since 2004 on field
sobriety tests, and testified that she administered the HGN test Athousands
of times.@  She relied on her experience, training,
refresher courses, certification as a Standardized Field Sobriety Testing
instructor, the 2006 NHTSA manual, and common sense in administering the HGN
test to Bryant. Bryant neither challenged Officer Martin's qualifications, nor
offered evidence questioning Officer Martin=s
reliance on her training, refresher courses, or the 2006 NHTSA manual.








Officer
Martin admitted that the NHTSA manual does not account for someone sitting in a
carCrather
than standingCperforming
the HGN test, but testified she read scientific studies and was taught in field
sobriety refresher courses that HGN is not affected by a person standing,
sitting, or lying down. She admitted that the 2004 NHTSA guidelines instruct an
officer to tell the subject to stand with feet together and hands to the
side.  But Officer Martin said those
specific instructions did not apply in this case where Appellant was sitting
rather than standing.  Officer Martin
specifically testified that she administered the HGN test in accordance with
her training and the NHTSA manual's procedures regarding the number of seconds
and passes per eye.

In Emerson,
the court of criminal appeals focused on the scientific research regarding the
effect of alcohol consumption on human eye movement, without mention of the
subject=s
position when tested.  See Emerson,
880 S.W.2d at 765B66.  Because the Emerson court did not
differentiate between the science pertaining to the HGN of a person seated
versus standing, the trial court did not abuse its discretion in finding the
scientific theory behind the HGN to be reliable, nor did it improperly apply
the law to the facts in this case.  Id.
at 768; Etheridge, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994); Romero,
800 S.W.2d at 543.

Additionally,
the technique of administering the HGN was applied properly in this case.  In Emerson, the court referred to a
pamphlet used in Texas to train officers to administer the HGN and noted that
officers must find the following criteria in the HGN test:

$       
an
inability to pursue smoothly an object, or stimulus, moving sideways across the
suspect=s field of vision;

$       
distinct,
or pronounced, nystagmus at the eye=s maximum horizontal deviation; and 








$       
an
angle of onset of nystagmus of less than or equal to 45 degrees.

 

Emerson,
880 S.W.2d at 766 (citing DWI Detection and Standardized Field Sobriety Testing
at VIII-13, NHTSA (1992)).  None of the
required factors pertain to a standing or seated position of the subject taking
the HGN test.








The
record reveals that the trial court had two articles before it, both included
in the appendix of the State=s
trial brief, supporting the validity of an HGN test administered while the
subject is seated.  The first article,
from the November 2003 issue of Optometry Journal, states that as of the
article=s
publication date, the NHTSA did require that a suspect being administered the
HGN test stand with feet together and hands at his side.  This study, conducted by Karl Citek,[4]
O.D., Ph.D., and others, resulted in the finding that the HGN administered in
the standing, seated, and supine postures is able to discriminate impairment at
a blood alcohol content of 0.08 percent and higher.  The testing of the HGN in different positions
was conducted in the same manner in all test postures and was consistent with
NHTSA guidelines.  The study recommends
that an officer conducting the HGN of a subject in a seated posture position
the subject so that the subject=s
eyes can be seen easily throughout the test. 
AThis
may involve asking the subject to turn the body slightly at the waist, in
addition to the head turn used in the current study.  Such a minor change in posture will not
affect the results.@  Officer Martin testified that Bryant was
seated, but turned facing Officer Martin during the HGN test.  The second article, published by the NHTSA to
assist judges, prosecutors, and law enforcement on the science and law behind
the HGN, stated, AThe HGN test is very easy to
administer . . . . the subject does not have to be standing but can be sitting
down.@

Officer
Martin testified she followed the 2006 NHTSA manual at the time she
administered the HGN test, and that the specific instruction argued by Bryant
does not apply when administering the HGN to a seated individual. Officer
Martin also testified the specific verbal instructions dictated by the NHTSA=s
2006 practitioner manual to be given to a suspect prior to administering the
HGN do not include an instruction for the subject to place her feet together
and her hands at her sides, as Bryant maintained in her motion to suppress and
asserts in this appeal.[5]  








Slight
variations in the administration of the HGN test do not render the evidence
inadmissible or unreliable, but may affect the weight to be given the
testimony.  See Kamen v. State,
305 S.W.3d 192, 196B99 (Tex. App.CHouston
[1st Dist.] 2009, no pet. h.); see also Plouff v. State, 192 S.W.3d 213,
221 (Tex. App.CHouston
[14th Dist.] 2006, no pet.);   Compton
v. State, 120 S.W.3d 375, 378 (Tex. App.CTexarkana
2003, pet. ref=d).  The trial court could have found that any
variations made by Officer Martin were slight and, therefore, did not affect
admissibility of the evidence.  See
Kamen, 305 S.W.3d at 196B99; see
also Plouff, 192 S.W.3d at 221; Compton, 120 S.W.3d at 378.  Bryant contends that Officer Martin=s
administration was not a slight variation from the NHTSA guidelines, but more
analogous to McRae, and that this court should follow its rulings in Smothers
v. State and Tillinghast v. State and hold that the trial court
erred in admitting HGN evidence when the officer did not comply with NHTSA
guidelines.  McRae, 152 S.W.3d at
744; Tillinghast, No. 02-04-00553-CR, 2005 WL 2323197, at *1 (Tex. App.CFort
Worth 2005, no pet.); Smothers, No. 02‑03‑00056‑CR,
2004 WL 1597652, at *2 (Tex. App.CFort
Worth 2004, no pet.) (not designated for publication).  








In McRae,
the court held that the officer=s
error was not merely a slight variation in the administration of the HGN test
when the officer admitted that he did not administer all three parts of the HGN
technique to the appellant, that he did not comply with the NHTSA guidelines
because he only made one pass of each eye rather than two passes of each eye,
and that he did not conduct a valid HGN test. 
McRae, 152 S.W.3d at 743B44.  Similarly, in Smothers, we held that
the administration of the HGN test results did not meet the Emerson
requirements for admissibility based upon the officer=s
admission that he did not administer the test properly by completing the
minimum number of passes across appellant=s
eyes.  Smothers, 2004 WL 1597652,
at *2.  In Tillinghast, we held
that the trial court abused its discretion by admitting evidence of an HGN test
without requiring proof from the State that the test was administered in
compliance with NHTSA standards, as required by Emerson.  2005 WL 2323197, at *3.  The officer in Tillinghast merely
testified that she performed the HGN test, and that she attempted to give clear
instructions to appellant during each of the field sobriety tests.  Id. 

Here,
unlike the facts in McRae and Smothers, Bryant does not allege
that Officer Martin failed to conduct all three parts of the HGN test or that
Officer Martin failed to conduct the proper number of passes across Bryant=s
eyes.  Moreover, Officer Martin testified
she administered the HGN test according to the NHTSA guidelines, unlike the
officers=
admissions to not following the NHTSA guidelines in McRae and Smothers
.  And, unlike the officer=s
testimony in Tillinghast, Officer Martin testified to specific details
of the HGN test demonstrating that she followed the NHTSA guidelines.  Specifically, Officer Martin testified that
she held the stimulus at the distance from Bryant=s
nose required by the NHTSA guidelines, that she conducted the number of passes
and held the stimulus for the number of seconds required by the NHTSA
guidelines, and that she observed nystagmus during each of the three parts of
the HGN test.  Thus, we do not find McRae,
Smothers, or Tillinghast analogous to the facts of this case. 








Instead,
we agree with the State=s argument that the facts of
this case are similar to those in Plouff and Compton, in which
the courts held that slight deviations from the NHTSA manual did not invalidate
the HGN results. Plouff, 192 S.W.3d at 221; Compton, 120 S.W.3d
at 378.  In Compton, the court
applied the Emerson factors and requirements and held that the officer=s
slight deviation in the number of seconds taken to conduct HGN from the number Arecommended@ by
the NHTSA manual did not invalidate the test results.  Compton, 120 S.W.3d at 378.  In Plouff, the appellant contended,
among other things, that the officer failed to satisfy the first part of the
HGN testCchecking
for equal tracking and equal pupil sizeCbecause
he moved the stimulus across appellant=s
eyes in four seconds rather than two seconds. 
Plouff, 192 S.W.3d at 221, n.7. 
The Plouff court agreed with the Compton court=s
conclusion that Ait would be unreasonable to
conclude that any variation in administering the [standardized field sobriety]
tests, no matter how slight, could automatically undermine the admissibility of
an individual=s
performance of the tests.@  Plouff, 192 S.W.3d at 221 (citing Compton,
120 S.W.3d at 378).

Presuming,
without deciding, that Officer Martin varied from the NHTSA standardized
procedure by administering the HGN test with Bryant seated, we do not agree
with Bryant that such a variation automatically undermined the admissibility of
the HGN test and results.  See id.  The trial court was free to believe any or
all evidence presented and to make a determination of the facts supported by
the record after evaluating the credibility and demeanor of the witnesses at
the hearing.  Id. at 221B22.  At the hearing, Officer Martin testified that
she followed NHTSA guidelines with respect to the HGN test and that she
attended seminars and read studies that taught her that a police officer is
allowed to administer the HGN to a seated subject.  We conclude that the trial court did not
abuse its discretion in denying Bryant=s
motion to suppress.  Accordingly, we
overrule Bryant's first issue. 








B.  Sufficient Evidence To Support DWI Conviction

In
her second and third points, Bryant contends that the evidence is legally and
factually insufficient to support her conviction for driving while
intoxicated.  Specifically, Bryant argues
that the State failed to prove that she was intoxicated by the introduction
into her system of alcohol, a controlled substance, a drug, or a combination of
two or more of those substances.  The
State responds that the evidence proved Bryant=s
loss of normal use of her mental or physical faculties was by reason of her
admitted consumption of alcohol, or admitted ingestion of a prescription drug
with alcohol consumptionCwhich she admitted the
prescription=s
label warned against combining.

1.
Legal Sufficiency

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the prosecution in order
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).








This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  The trier of fact is the
sole judge of the weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art.
38.04 (Vernon 2009); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim.
App. 2008).  Thus, when performing a
legal sufficiency review, we may not re‑evaluate the weight and
credibility of the evidence and substitute our judgment for that of the
factfinder.  Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131, 120
S.Ct. 2008 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9, 16B17
(Tex. Crim. App. 2007).  We must presume
that the factfinder resolved any conflicting inferences in favor of the
prosecution and defer to that resolution. 
Jackson, 443 U.S. at 326, 99 S.Ct. at 2793; Clayton, 235
S.W.3d at 778.








The
sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case.  Grotti v. State, 273 S.W.3d 273, 280
(Tex. Crim. App. 2008); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997).  Such a charge would be one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried.  Gollihar v. State, 46 S.W.3d 243, 253
(Tex. Crim. App. 2001); Malik, 953 S.W.2d at 240.  However, we may not affirm a conviction based
on legal or factual grounds that were not submitted to the jury.  Malik, 953 S.W.2d at 238, n. 3.  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the charging
instrument.  See Curry v. State,
30 S.W.3d 394, 404 (Tex. Crim. App. 2000). 
The standard of review is the same for direct and circumstantial
evidence cases; circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor.  Clayton,
235 S.W.3d at 778; Hooper, 214 S.W.3d at 13.

2.
Factual Sufficiency

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 1037 (2009); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder's determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the factfinder's determination is manifestly unjust.  Lancon v. State, 253 S.W.3d 699, 704
(Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor
a subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury's resolution of a conflict in the
evidence.  Id.  We may not simply substitute our judgment for
the factfinder's.  Johnson v. State,
23 S.W.3d 1, 12 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404,
407 (Tex. Crim. App. 1997).  Unless the
record clearly reveals that a different result is appropriate, we must defer to
the jury's determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder's
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant's right to a trial by jury.  Lancon,
253 S.W.3d at 704.

An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant's complaint on
appeal.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).

3.  Application of Law to Facts








The
offense of driving while intoxicated contains three elements:  (1) operation of a motor vehicle; (2) in a
public place; (3) while intoxicated.  See
Tex. Penal Code. Ann. ' 49.04(a) (Vernon
2009).  The Texas Penal Code defines Aintoxicated@ as

(A)
not having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body;[6]
or (B) having an alcohol concentration of 0.08 or more.

 

Tex. Penal Code Ann. ' 49.01(2).  The fact that a person does not have the
normal use of his mental or physical faculties by reason of introduction of a
controlled substance or a dangerous drug into his body may be proved by
circumstantial evidence.  See
Smithhart v. State, 503 S.W.2d 283, 284 (Tex. Crim. App. 1974).[7]

The
opinion testimony of the arresting officer alone is legally sufficient to
support a finding of intoxication.  See
Annis v. State, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979); Hartman
v. State, 198 S.W.3d 829, 835 (Tex. App.CCorpus
Christi 2006, pet. struck).








Officer
Snailer testified that:  (1) he responded
to a certain stretch of highway per dispatch to look for a specifically
described vehicle; (2) he followed Bryant=s
vehicle and observed it swerve into the right shoulder, swerve over the white
line at least twice, and almost hit a concrete bridge; (3) Bryant=s
car cut off a vehicle entering the highway as Bryant attempted to pull over
after Officer Snailer activated his overhead lights; and (4) Bryant could not
locate her driver=s license or insurance
information upon request.

Officer
Martin testified without objection that: (1) she observed Bryant wearing a
wristband consistent with having been in a bar; (2) she smelled a moderate odor
of alcohol; (3) she had difficulty understanding Bryant a Acouple
of times@ and
Bryant=s
speech was slurred; (4) Bryant had glassy eyes; (5) Bryant admitted drinking
two glasses of wine at a casino approximately three hours before the stop; (6)
Bryant admitted she took medication that day and that the pill bottle bore a
warning label not to consume alcohol; (7) Bryant indicated six out of six clues
on the HGN test; and (8) Bryant stumbled as she walked barefoot toward the rear
of the vehicle. 

A
rational fact finder viewing this evidence in the light most favorable to the
State could have found beyond a reasonable doubt that Bryant was driving while
intoxicated.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  We hold, therefore, that the evidence is
legally sufficient to support Bryant=s conviction
for driving while intoxicated.








With
regard to the factual sufficiency of the evidence, we are required to review
all the evidence in a neutral light.  Neal,
256 S.W.3d at 275; Watson, 204 S.W.3d at 414.  In cases based upon circumstantial evidence,
it is not required that all facts point to a defendant=s
guilt; it is sufficient if the combined and cumulative force of all of the
incriminating circumstances warrants the conclusion of guilt.  See Courson v. State, 160 S.W.3d 125,
128 (Tex. App.CFort
Worth 2005, no pet.) (citing Johnson v. State, 871 S.W.2d 183, 186 (Tex.
Crim. App. 1993) (en banc)).  Here, the
record contains evidence that no alcohol or drugs were found in Bryant=s
car; that there were no breath or blood tests conducted on Bryant; that Bryant
told Officer Martin she was tired; that Bryant appeared elderly; that Officer
Snailer testified he did not smell alcohol on Bryant; and that Bryant=s
reckless driving could be attributable to the bad weather conditions. 








As Athe
sole judge of the weight and credibility given to witness testimony,@ the
jury was entitled to give less weight to Bryant's explanation for her erratic
driving and more weight to the officers' accounts of the events.  Deferring to the jury's role and viewing all
the evidence in a neutral light, we therefore hold that the evidence supporting
the verdict is not so weak that the factfinder's determination is clearly wrong
and manifestly unjust and that conflicting evidence does not so greatly
outweigh the evidence supporting the conviction that the factfinder's
determination is manifestly unjust.  See Neal, 256 S.W.3d at 275; Lancon,
253 S.W.3d at 704; Watson, 204 S.W.3d at 414‑15, 417; see also
Guyett v. State, No. 11-08-00003-CR, 2008 WL 3846221, at *1, 3 (Tex. App.CEastland
Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (holding
evidence factually sufficient to support DWI conviction, despite testimony that
appellant had undergone three brain surgeries and spinal surgery); Gray v.
State, No. 05-04-01269-CR, 2005 WL 1670715, at *7 (Tex. App.CDallas
July 19, 2005, no pet.) (not designated for publication) (holding evidence
factually sufficient, despite testimony that tie rod on appellant's car broke
and caused her to lose control, because jury was free to believe officer's
testimony); Payne v. State, No. 12-02-00312-CR, 2003 WL 22047776, at *9
(Tex. App.CTyler
Aug. 29, 2003, pet. ref=d) (mem. op, not designated
for publication) (holding evidence factually sufficient, despite evidence that
appellant was ill and not intoxicated on the morning of the accident, because
jury was free to believe eyewitnesses' and officers' accounts of what they
saw).  We overrule Bryant=s
second and third points.

V.  CONCLUSION

Having
overruled Bryant=s three points, we affirm
the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 15, 2010











[1]The dispatcher
advised Officer Snailer that the concerned caller, driving an orange Schneider
semi truck, was following a dark-colored sedan and reported that the sedan Awas swerving all over
the road and had been since the Oklahoma border.@





[2]A videotape recording
of the stop exists; however, due to a technical problem or malfunction with
courtroom equipment, only the first five minutes could be played for the jury.





[3]The videotape shows
Bryant standing barefoot on the shoulder of the road behind her car.





[4]Officer Martin
testified she is familiar with Dr. Citek because she read his studies and
attended his seminars.





[5]The specific verbal
instructions dictated by the 2006 edition of the  Texas Standard Field Sobriety Testing
Practitioner Manual appear in the record as Appendix B of the State=s trial brief.





[6]This definition was
included within the indictment, and the application paragraph of the jury
charge tracked the indictment.





[7]In Smithhart,
the Texas Court of Criminal Appeals placed some limits on the admissibility of
non-expert testimony on whether a person is under the influence of drugs; but
the Court explicitly held that the State could prove this element by
circumstantial evidence.  See id.