**Opinion filed October 21, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00017-CR
_____

## DICKEY RAY MAUPIN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 371st District Court**

**Tarrant County, Texas**

**Trial Court Cause No. 1097900D**

## M E M O R A N D U M   O P I N I O N

The jury convicted Dickey Ray Maupin of felony driving while intoxicated, and the trial court sentenced him to fifteen years confinement. We affirm.

### I. *Background Facts*

Benbrook Police Officer J. Hughes stopped Maupin for a traffic violation. Officer Hughes smelled alcohol when he approached Maupin's vehicle and on Maupin's breath when they talked. Maupin told Officer Hughes that he had drunk one beer. Officer Hughes noticed

that Maupin's speech was slightly slurred, his eyes were red, and his balance was unsteady. Officer Hughes decided to conduct a DWI investigation.

Officer Hughes first performed a horizontal gaze nystagmus (HGN) test. Maupin exhibited all six possible signs of intoxication. Officer Hughes then had Maupin perform a walk-and-turn test. Maupin had balance problems and exhibited six out of a possible eight signs of intoxication. Maupin attempted the one-leg stand test but was unable to complete it because he swayed and kept dropping his foot. Officer Hughes arrested Maupin and searched his vehicle. He found one open beer can and two empties. Maupin was taken to the Benbrook police station and was administered a breath test. This did not register a BAC reading because Maupin only imitated blowing into the intoxilyzer.

## II. *Issues*

Maupin challenges his conviction with three issues. Maupin contends that the trial court abused its discretion by admitting the HGN test results because Officer Hughes was not certified to administer the test, because he was not qualified to testify as an expert witness, and because he did not follow standard testing protocol.

## III. *Discussion*

Maupin had appointed counsel, but he filed a pro se motion to suppress the State's sobriety test. Trial counsel filed a motion in limine and requested a hearing prior to the admission of any HGN test evidence to determine if Officer Hughes was qualified to administer the test and if the test was properly administered. The trial court conducted a pretrial hearing during which Officer Hughes testified and described his training and experience with the HGN test and the procedures he followed when testing Maupin. At the conclusion of the hearing, Maupin objected to any HGN test evidence contending that the test was improperly administered. The trial court characterized Maupin's objection as a challenge to the weight rather than admissibility of the evidence and overruled it.

*A. Standard of Review.*

We review the trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Appellate courts will uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement because trial courts are in the best position to decide questions of admissibility. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). An

2

appellate court may not reverse a trial court's decision regarding the admissibility of evidence solely because the appellate court disagrees with the decision. *Id.* A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

### B. Did Maupin Preserve the Issues He Advances on Appeal?

Maupin complains in Issues One and Two that the trial court abused its discretion by admitting HGN test evidence because Officer Hughes was not properly certified to administer the test and because Officer Hughes was not qualified to testify as an expert witness. The State responds that these issues are disparate from Maupin's trial court objection and, therefore, have not been properly preserved. We agree.

To preserve error for appellate review, the complaining party must make a timely objection that states the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). The complaint raised on appeal must comport with the objection made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

At the beginning of the pretrial hearing, the prosecutor said: "I want to clarify with defense counsel, essentially what we're doing is a motion to suppress the HGN; is that right?" The trial court added: "I understand it to be a *Daubert*[1] hearing, *Daubert Emerson*."[2] Defense counsel responded by saying: "Yes. And that actually is the same thing, Your Honor, because if we prevail in the motion, then you would suppress any findings on the HGN. I think we're using different words, but it's the same vehicle." At the conclusion of the evidence, defense counsel made the following argument:

> [DEFENSE COUNSEL]: And, Your Honor, first of all, as there was no request to take judicial notice of the law regarding HGN as an expert – excuse me – as a reliable science, under *Daubert*, it has to be a recognized theory that –
>
> TRIAL COURT: Well, and I – as a gatekeeper, I do have notice of the laws of Texas and the case of *Emerson* specifically. So let's get beyond that argument.

---

[1]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[2]*Emerson v. State*, 880 S.W.2d 759 (Tex. Crim. App. 1994).

[DEFENSE COUNSEL]: The officer himself testified that it's not an exact science.

Second of all, he didn't just vary a little bit, which the law allows, on the administration of the HGN. Twenty-five percent is a significant number. If it had been twenty-five percent over, the manual says that's all right because there are minimum times that he has to do. He did not do that. The manual says you have to do this properly, and even *Daubert* says, if you don't do it properly, then it's inadmissible. He didn't do it properly.

It says he's supposed to keep his head still, specifically keep your head still. He didn't do that. He let his eyes – let his head move. There again, that is not per the protocol of the HGN. Giving the test in forty-three seconds versus sixty-four is significant. There again, that is not incidental. That would make the test invalid. And both those – either one separately or both combined would make this test not administered properly. Therefore, it should be inadmissible and excluded.

Maupin's objection went strictly to Officer Hughes's testing protocol. He did not object to Officer Hughes's credentials to administer or testify about the test. Because Maupin's first two issues do not comport with his trial objection, they have not been preserved and are overruled.

*C. Did the Trial Court Abuse its Discretion by Admitting HGN Test Evidence?*

Maupin contends in his third issue that the test's validity was impermissibly compromised because Officer Hughes did not follow standardized testing procedures as established by the National Highway Traffic Safety Administration (NHTSA) DWI Detection and Standardized Field Sobriety Testing Student Manual. The State responds that the trial court did not abuse its discretion because it had sufficient information to conclude that the test results were reliable.

Texas law unequivocally holds that the results of a properly administered HGN test are admissible and that a test performed in compliance with the NHTSA's DWI Detection Manual is a properly administered test. *Emerson v. State*, 880 S.W.2d 759, 768-69 (Tex. Crim. App. 1994). Maupin describes the NHTSA protocol as a mandatory guideline and argues that Officer Hughes's testimony was inadmissible because he moved the stimulus further than proscribed in the manual and because he completed the test in less than the minimum permitted time.

Officer Hughes testified that he was given a manual when he was trained to administer the HGN test. This manual states that test subjects are to keep their heads still. Officer Hughes

4

testified that he instructed Maupin to keep his head still during the test but that Maupin moved his head with the stimulus and, thus, that he was required to move the stimulus further than normal. Officer Hughes testified that neither the manual nor his training covered what to do when the subject moved his head during the test. He agreed that he had not been trained to simply keep moving the stimulus. Officer Hughes also testified that he was trained to perform each component of the test for a minimum number of seconds and that the test should take at least sixty-four seconds. However, according to the videotape of the stop, he completed the test in as little as forty-three seconds. Nonetheless, Officer Hughes maintained that the test results were valid. He testified that the HGN test is designed for field use and that he cannot watch a clock and the subject's eyes.

Maupin did not offer any evidence during the pretrial hearing. The trial court, therefore, was faced with unrefuted testimony that the test results were valid. Conversely, it was also undisputed that Officer Hughes performed the test in less time than called for in the NHTSA manual and that there is no protocol for testing subjects unable or unwilling to keep their head still. The question we must address is whether the trial court had the discretion to decide that these departures from the manual went to the weight of the evidence rather than its admissibility.

Texas courts have consistently held that slight variations from the manual's testing protocol do not render HGN test results inadmissible but may affect the weight to be given the testimony. *See, e.g., Kamen v. State*, 305 S.W.3d 192, 196-99 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Permissible variations include performing the test faster than proscribed. *See, e.g., Compton v. State*, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref'd). In *Compton*, the investigating officer performed the smooth pursuit portion of the HGN test in eleven seconds instead of sixteen and the maximum deviation in nineteen seconds rather than thirty-two. The court found that this did not render the test inadmissible, noting that the manual provides approximations of the time required to properly administer the test and that, for the maximum deviation test, any variation in the time taken to appropriately position the eye would have no effect on the reliability of the test. *Id.* at 378-79.

Texas courts have, however, held that noncompliance with the NHTSA guidelines renders the evidence inadmissible. *See, e.g., McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). In *McRae*, the court held that the officer's error was not a

mere slight variation in test administration when the officer admitted that he did not administer all three parts of the HGN test, that he did not comply with the manual because he made only one pass of each eye rather than two, and that his test was not valid. *Id.* at 743-44.

The trial court did not err by finding Officer Hughes's testimony admissible. The test was performed quicker than the manual proscribes, but the variance was comparable to the leeway courts have previously afforded officers to reflect the fact that this is a field test. Moreover, there was no attempt to exclude that portion of the test for which time discrepancies can have no impact. The trial court could reasonably conclude that Officer Hughes's decision to move the stimulus further when Maupin refused to keep his head still during the exam was appropriate. There was no evidence to suggest that this impacted the test's validity, and if Maupin's position were accepted, an individual could always defeat the test merely by moving his head.

If the trial court did abuse its discretion, any error was harmless. There was considerable evidence Maupin was intoxicated in addition to the HGN test. Officer Hughes smelled alcohol coming from Hughes's vehicle as he approached and on Maupin's breath when they talked. Maupin failed the walk-and-turn test and was unable to perform the one-leg stand test for lack of balance. Maupin's eyes were bloodshot, his speech was slurred, and he was unsteady on his feet. He admitted to drinking. Officer Hughes found one open and two empty beer cans in Maupin's vehicle. Maupin was at a minimum confused about where he was going to and where he had come from. His behavior at the scene and police department was consistent with intoxication – in fact counsel conceded that his behavior rendered him guilty of being a felony jerk, and he imitated blowing into the intoxilyzer. Issue Three is overruled.

IV. *Conclusion*

The judgment of the trial court is affirmed.

RICK STRANGE

October 21, 2010                                              JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

6