PD-1557-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/1/2015 5:56:10 AM
Accepted 12/1/2015 3:55:12 PM
ABEL ACOSTA
CLERK

PD-1557-15

No. _____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

KEITH LADALE WILSON,

Petitioner

v.

THE STATE OF TEXAS,

Respondent

No. 01-13-00917-CR
Court of Appeals
First District

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

December 1, 2015

ABEL ACOSTA, CLERK

James F. Keegan
Texas Bar No. 11155400
4421 Jim West Street
Bellaire, Texas 77401
713-668-4797
713-668-4798-facsimile
whynyet@sbcglobal.net
Attorney for Petitioner

Oral Argument Requested

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

David V. Wilson, Senior Judge
Polk County, Texas
Trial Judge


Keith Ladale Wilson
Petitioner

Represented at trial and on appeal by:

James F. Keegan
Texas Bar No. 11155400
4421 Jim West Street
Bellaire, Texas 77401
713-668-4797
713-668-4798-facsimile
whynyet@sbcglobal.net


The State of Texas
Respondent

Represented at trial by:

Philip Anthony Grant
Texas Bar No. 00796662
District Attorney *pro tem*
Tiana Jean Sanford
Texas Bar No. 24062269
Assistant District Attorney *pro tem*
207 W. Phillips
2nd Floor
Conroe, Texas 77301
936-539-7800
936-760-6940-facsimile

Represented on appeal by:

Philip Anthony Grant
Texas Bar No. 00796662
District Attorney *pro tem*
Jason Larmon
Texas Bar No. 24072468
Assistant District Attorney *pro tem*
207 W. Phillips
2nd Floor
Conroe, Texas 77301
936-539-7800
936-760-6940-facsimile
DAInfo@mctx.org

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES AND COUNSEL ...................................................... i

TABLE OF CONTENTS ................................................................................. iii

INDEX OF AUTHORITIES ............................................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ...................................... vi

STATEMENT OF THE CASE ......................................................................... vii

STATEMENT OF PROCEDURAL HISTORY ........................................... viii

GROUND FOR REVIEW ................................................................................ 6

ARGUMENT ...................................................................................................... 6

PRAYER FOR RELIEF .................................................................................. 13

CERTIFICATE OF COMPLIANCE ........................................................... 14

CERTIFICATE OF SERVICE ...................................................................... 14

APPENDIX A – OPINION OF THE COURT OF APPEALS

APPENDIX B – CONCURRING OPINION OF JUSTICE HUDDLE

# INDEX OF AUTHORITIES

Cases                                                                                        Page

*Cardenas v. State*, 30 S.W.3d 384, 393 (Tex.Crim.App. 2000) ………..…….…..…….. 7

*Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007) …………….….…….. 3

*Curtis v. State*, 89 S.W.3d 163
    (Tex.App.-Fort Worth 2002, pet. ref'd) …….…………………….…….. 4,7

*Davis v. State*, 979 S.W.2d 863
    (Tex.App.-Beaumont 1998, no pet.) ……………………….….……. 3

*Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App. 2001) ……………..…………….. 9

*Ovalle v. State*, 13 S.W.3d 774, 787 (Tex.Crim.App. 2000) ……...………….…….. 9

Texas Rules of Appellate Procedure

Rule 38.1 ................................................................................................................ 8

Rule 38.9 ................................................................................................................ 8,9

Texas Rules of Evidence

Rule 402 ................................................................................................................ 2,4

Rule 403 ................................................................................................................ 2,4

Rule 404(b) ................................................................................................................ 2,3

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument to more effectively explain the applicability of Rule 38 of the Texas Rules of Appellate Procedure to the his briefing of Issue No. 2 before the First Court of Appeals.

STATEMENT OF THE CASE

Wilson was charged in No. 22281 with second degree felony sexual assault, the indictment (CR-6) alleging that, on or about 29 May 2010, in Polk County, Texas, he intentionally or knowingly caused the penetration of the sexual organ of Joyce Doe with his sexual organ, without her effective consent.

This appeal arises from a retrial beginning on 19 August 2013, after an earlier hung jury (*see* CR-86). Voir dire was conducted (*see* RR2), Wilson plead not guilty (RR3-12), the State presented twelve witnesses, Wilson five, including himself, the State presented two rebuttal witnesses, and Wilson testified again. The jury found Wilson guilty of sexual assault as charged in the indictment. CR-67 and RR5-119.

Wilson elected the jury to assess his punishment (CR-24), and the punishment phase of trial was conducted on 21 August 2013 and 22 August 2013. *See* RR6 & RR7. The jury assessed Wilson's punishment as confinement in the Texas Department of Criminal Justice – Institutional Division for a term of 14 years. CR-71 & RR7-126.

## STATEMENT OF PROCEDURAL HISTORY

1.   The Court of Appeals for the First District issued its published opinion on 25 August 2015.  Justice Huddle issued a concurring opinion.

2.   Petitioner timely filed a motion for rehearing and a motion for *en banc* reconsideration on 9 September 2015.

3.   The Court of Appeals denied both the motion for rehearing and the motion for *en banc* reconsideration on 3 November 2015.  Justice Huddle would have granted rehearing, but the Court unanimously denied the motion for *en banc* reconsideration.

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Keith Ladale Wilson petitions the Court to review the decision of the Court of Appeals for the First District in 01-13-00917-CR, affirming his conviction for sexual assault in No. 22281 in the 411th District Court of Polk County, Texas, and his sentence of confinement in the Texas Department of Criminal Justice – Institutional Division for a term of 14 years.

### THE ISSUE PRESENTED TO THE COURT OF APPEALS

By his brief, Wilson presented five issues to the Court of Appeals, but that Court's disposition of only one, No. 2, is challenged here.  Issue No. 2 was as follows:

2.  The court below erred in allowing the State to present evidence of an extraneous sexual assault alleged to have been committed after the alleged sexual assault for which Wilson was on trial.  RR5-5-73.

### THE ARGUMENT OF WILSON TO THE COURT OF APPEALS

The first issue Wilson presented to the Court of Appeals constituted a challenge to the sufficiency of the evidence to sustain his conviction, and, in support of his challenge, Wilson presented a detailed, 27-page summary of the trial evidence, replete with the required page references (Brief of Appellant – 5-32), including a summary of the evidence of the extraneous sexual assault upon another young woman, Brianna (Brief of Appellant – 30-32).

1

The second issue Wilson presented to the Court of Appeals was his challenge to the admission of evidence of an extraneous sexual assault, which he argued as follows:

After Wilson rested, the court below allowed the State to present evidence of an extraneous sexual assault alleged to have been committed on the night of 25 December 2011. Two witnesses testified on behalf of the State, Brianna and Jenny Smith (RR5-22-77), and Wilson testified that he had not even been at the scene that night (RR5-79). Wilson has already summarized the evidence regarding the extraneous offense, and his summary is incorporated by reference, rather than unnecessarily repeated.

Prior to the presentation of the evidence of the extraneous offense, the court below allowed the State and the defense to argue for, and against, respectively, its presentation. RR5-5-13. At the conclusion of the argument, the court ruled that the evidence was admissible. RR5-13. Wilson understands the State to have presented the evidence to rebut his defensive theory of consent, and to show his intent to have sex with an unconscious, non-consenting woman. RR5-11.

The evidence of the extraneous offense was inadmissible. Rule 404(b) of the Texas Rules of Evidence provides, in relevant part, as follows:

Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident … .

Rule 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 402 prohibits the admission of evidence which is not relevant.

"Probative value" refers to the inherent probative force of an item of evidence – how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation – coupled with the need of the proponent for that item of evidence. "Unfair prejudice" refers to a tendency to suggest decision on an improper basis, commonly, but not necessarily, an emotional one. *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007).

Immediately evident is that the facts and circumstances of the alleged assault of Joyce Doe and of the alleged assault of Brianna are in almost no way similar. The State attempted to prove that Wilson had assaulted Joyce, whom he had not previously met, at a party, inside a home, while numerous people were still in attendance, while Joyce was intoxicated, and while he and Joyce were alone in a game room. The State attempted to prove that Wilson, more than a year-and-a-half later, had assaulted Brianna, whom he had previously known, and with whom he had previously engaged in consensual sexual conduct (*see* RR5-14-15), outside, in a wooded area, in or around an automobile, in the presence of one or two of his acquaintances, after Brianna had agreed to engage in sexual conduct with one of those acquaintances for a fee. Brianna was not even certain that it was Wilson who had assaulted her. The evidence of the alleged assault of Brianna can not have rebutted Wilson's defensive theory of consent, or shown his intent of having sex with an unconscious, non-consenting woman. Brianna was not unconscious. The State presented the evidence only to show character conformity, which is not a proper purpose for admission under Rule 404(b).

*Davis v. State*, 979 S.W.2d 863 (Tex.App.-Beaumont 1998, no pet.), cited by the State in argument before the court below, is distinguishable. The defendant was convicted of aggravated kidnapping and aggravated sexual assault, upon evidence that he had suddenly announced to the victim that he was going to rape her, and had picked up a knife, struck her in the face with his fist, dragged her from her mother's home, carried her to his own house, and there had violated her vaginally and orally, and attempted to violate her anally. He repeatedly struck her and pulled her hair, and always had the knife somewhere on the bed.

On appeal the court affirmed, rejecting argument that the trial court had erred in admitting testimony of extraneous offenses with language which is instructive –

Although we find that Davis opened the door to rebuttal evidence concerning the defensive theory of consent, we are still required, under a Rule 404(b) objection, to consider whether the extraneous offense testimony was relevant to any fact of consequence in the case other than character conformity. ... We conclude it was. Testimony that Davis had on prior occasions and under similar facts restrained Wallace and Flenoury for several hours, while either attempting and/or completing anal sex without their consent, makes it more likely that Davis intended to restrain, beat, and have anal, oral, and vaginal sex with DP without her consent. Consent to have sex without the consent of DP was an elemental fact.

At 867.

In *Curtis v. State*, 89 S.W.3d 163 (Tex.App.-Fort Worth 2002, pet. ref'd), the court reversed a conviction for capital murder because of the erroneous admission of evidence of an extraneous offense. The dissimilarities between the two offenses were considerable, and the court held that the trial court's ruling that the evidence was admissible fell outside the zone of reasonable disagreement as to whether the offenses were similar enough to warrant admission to show identity.

The court further held that the evidence of the extraneous offense was irrelevant to the issue of intent, noting that the State may not introduce extraneous offenses as circumstantial evidence of an element in its case-in-chief if that element can be readily inferred from other uncontested evidence. At 175. The court also rejected argument that the evidence was admissible to show that the deceased victim had not consented to sexual intercourse days before her murder, rather than having been sexually assaulted contemporaneously with her murder. Finally, the court held that the evidence was inadmissible under Rule 403, because it was unfairly prejudicial.

Finally, the evidence of the alleged assault of Brianna should have been excluded by Rule 403 and Rule 402, as its probative value was substantially outweighed by the danger of unfair prejudice, and it was irrelevant. Wilson was prejudiced by its admission. He has already summarized the guilt/innocence phase evidence, and his summary is incorporated by reference, rather than unnecessarily repeated. However, Wilson would note

4

that the evidence of the extraneous offense was not admitted at his first trial (*see* CR-59-61 and RR2-6-9), which ended in a hung jury.

Brief of Appellant – 36-40.

## THE OPINIONS OF THE COURT OF APPEALS

With an opinion issued on 25 August 2015, the Court of Appeals overruled Wilson's Issue No. 2. The Court, in an opinion authored by Justice Jennings, found that Wilson "does not argue that he was harmed" by the admission of the evidence of an extraneous sexual assault. Opinion – 24. The Court held that, because he had not "adequately briefed his extraneous-offense issue by identifying the harm that he suffered as a result of the admission of the complained-of evidence", Wilson had waived the issue. Opinion – 24.

Justice Huddle authored a concurring opinion, disagreeing "with the majority's conclusion that Wilson waived his challenge to the trial court's admission of extraneous-offense evidence due to inadequate briefing." Concurring Opinion – 1. However, Justice Huddle concluded that the "trial court's admission of the extraneous-offense evidence was not an abuse of discretion." Concurring Opinion – 7.

## GROUND FOR REVIEW

The Court of Appeals erred in holding that Wilson had waived his challenge to the admission of the evidence of an extraneous sexual assault because he had inadequately briefed resulting harm.

## ARGUMENT

It is important to emphasize that the Court of Appeals did not find that Wilson had inadequately briefed his entire challenge to the admission of the evidence of an extraneous sexual assault. Rather, the Court found only that Wilson had inadequately briefed harm. The assertion of the Court that Wilson had not argued in his brief that he was harmed by the admission of the evidence is factually not true. Wilson specifically and unambiguously argued, "Wilson was prejudiced by its admission." Brief of Appellant – p. 40. Further, Wilson did identify the harm – his first trial ended in a hung jury, whereas his second did not.

In finding that Wilson had inadequately briefed harm, the Court of Appeals was not only unable to find Wilson's argument, but searched for it in isolation from the remainder his brief. The Court made no mention of Wilson's exhaustive summary of the guilt/innocence phase evidence, including the evidence of the extraneous sexual assault; made no mention that Wilson had specifically and unambiguously incorporated that summary by reference into his argument that he was prejudiced; made no mention of

6

Wilson's 4-page argument that the evidence of the extraneous sexual assault had been erroneously admitted; made no mention that Wilson had cited in his argument *Curtis v. State*, 89 S.W.3d 163 (Tex.App..-Fort Worth 2002, pet. ref'd), in which the court reversed a conviction for capital murder because of the erroneous admission of evidence of an extraneous offense; and made no mention that Wilson had argued that his first trial, during which the evidence had not been admitted, had concluded with a hung jury. In the Court's analysis, Wilson's argument has not merely become unrecognizable – it has vanished. This is hardly a fair reading, much less a liberal reading, of Wilson's brief.

In finding that Wilson had inadequately briefed harm, the Court of Appeals relied at least in part upon *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex.Crim.App. 2000). However, *Cardenas v. State* is readily distinguishable, as none of the cases cited by the appellant therein was applicable to the issue under review, and the appellant therein failed to address whether the alleged error was harmless. Wilson, on the other hand, cited applicable cases, and, as he has already noted, the assertion of the Court that Wilson had not argued in his brief that he was harmed is factually not true.

It is not for the Court of Appeals to search for a reason to refuse to address an issue it would prefer not to address.  The Texas Rules of Appellate Procedure include the following:

## 38.1  Appellant's Brief

(i)  *Argument*.  The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.

## 38.9  Briefing Rules to be Construed Liberally

Because briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient, subject to the following:

(a)  *Formal Defects*.  If the court determines that this rule has been flagrantly violated, it may require a brief to be amended, supplemented, or withdrawn.  If another brief that does not comply with this rule is filed, the court may strike the brief, prohibit the party from filing another, and proceed as if the party had failed to file a brief.

(b)  *Substantive Defects*.  If the court determines, either before or after submission, that the case has not been properly presented in the briefs, or that the law and authorities have not been properly cited in the briefs, the court may postpone submission, require additional briefing, and make any other order necessary for a satisfactory submission of the case.

Wilson argument regarding the admission of the evidence of an extraneous sexual assault was in substantial compliance with Rule 38.  It was clear and concise, and included appropriate citations to authorities and to the record.  The Court of Appeals made no Rule 38.9(a) determination that Wilson had flagrantly violated Rule 38.  Nor could it.  Wilson's brief stands on its own

8

merits, and is a genuine effort. Notwithstanding the absence of such a determination, the Court did not order that Wilson's brief be "amended, supplemented, or withdrawn." The Court did make a Rule 38.9(b) determination that Wilson had not argued that he was harmed by the admission of the evidence of an extraneous sexual assault, but did not "require additional briefing" or "make any other order necessary for a satisfactory submission of the case."

*Johnson v. State*, 43 S.W.3d 1 (Tex.Crim.App. 2001), and *Ovalle v. State*, 13 S.W.3d 774 (Tex.Crim.App. 2000), cited by Justice Huddle in his concurring opinion, although not directly on point, are instructive. No burden to show harm should be placed on a defendant who appeals. No party should have the burden to prove harm from an error, and there is ordinarily no way to prove actual harm. It is the duty of the reviewing court to assess harm from the context of the error. Parties may assist by suggesting how the appellant was harmed, or was not, but it is the responsibility of the reviewing court to decide whether it is likely that the error had some adverse effect on the proceeding. *Johnson v. State* at 4, and *Ovalle v. State* at 787.

The Court of Appeals can not have been concerned about delay. Wilson's attorney tried this case twice in August 2013, first from Monday, 5 August 2013, through Thursday, 8 August 2013, and second from Monday, 19

August 2015, through Thursday, 22 August 2015.  *See* CR-85-87.  After trial had concluded the second time, he filed a motion to withdraw on 22 August 2013, which was granted by the trial court the same day.  CR-72-73.  The trial court appointed another attorney to represent Wilson on appeal.  CR-78.

Wilson's brief on appeal was originally due to be filed on 12 December 2013, but was not.  On 17 January 2014, the other attorney filed a motion to withdraw, which was granted by the trial court on 21 January 2014.  SCR-4-5.  On the same day, the trial court also appointed Wilson's attorney to represent Wilson on appeal.  SCR-5.

Wilson filed a motion on 12 February 2014, requesting an extension of time to file his brief until Monday, 17 March 2014.  The Court of Appeals granted the motion on 13 February 2014.  Wilson filed a motion on 19 March 2014, requesting a second extension of time until Friday, 21 March 2014, and filed his brief on 20 March 2014, but after 5:00 p.m.  The Court granted the second motion on 26 March 2014.

The State's brief was originally due to be filed on 21 April 2014, but the State filed a motion on 25 April 2014 requesting an extension of time until 21 May 2014.  The Court of Appeals granted the motion on 25 April 2014, and the State filed its brief on 21 May 2014.

On 8 December 2014, the Court of Appeals set Wilson's appeal for submission on 28 January 2015. On 31 March 2015, the Court gave notice that the appeal would be decided by a new panel, only Justice Jennings remaining from the original. On 25 August, 2015, the Court issued its opinions.

58 days elapsed from the date Wilson's attorney was appointed to represent Wilson on appeal to the date he filed Wilson's brief. 62 days elapsed from the date Wilson's brief was filed to the date the State filed its brief. 252 days elapsed from the date the State's brief was filed to the original submission date set by the Court of Appeals. 458 days elapsed from the date the State's brief was filed to the date the Court issued its opinions. An order by the Court to re-brief the issue of harm would not have caused any meaningful delay.

The State understood that Wilson was complaining that he had been harmed. In fact, in arguing that the evidence was admissible, the State all but acknowledged that that had been the point:

The complained of evidence in this case clearly made a fact of consequence more probable.

Brief of the State – p. 9.

Unquestionably, the trial court could have concluded that the extraneous offense provided at least a small nudge toward proving that the victim in the present case did not consent.

Brief of the State – p. 10.

The trial court could properly conclude that this evidence, despite differences in the circumstances surrounding the offenses, provided at least some evidence that the appellant engaged in nonconsensual intercourse with C.W.

Brief of the State – p. 12.

Wilson did adequately brief Issue No. 2 raised before the Court of Appeals. He cited appropriately to authority and to the record, and he argued that he was prejudiced by the admission of the evidence of an extraneous sexual assault. He noted that the evidence had not been admitted at his first trial, which ended in a hung jury. The Court erred in holding otherwise.

A criminal appeal is a valuable right, a very valuable right. That right includes the right to a decision on the merits. Wilson can not know what the decision of the Court of Appeals would have been had that Court not erroneously found that he had not argued that he was harmed by the admission of the evidence of an extraneous sexual assault. His case should be remanded to that Court to address Issue No. 2 on its merits.

PRAYER FOR RELIEF

Appellant Keith Ladale Wilson accordingly prays that the Court grant his petition for discretionary review, reverse the judgment of the Court of Appeals for the First District in No. 01-13-00917-CR, and remand the case to the Court of Appeals to address Issue No. 2 on its merits.

Respectfully submitted,
Keith Ladale Wilson
Petitioner

By:  /s/ James F. Keegan
     James F. Keegan
     Texas bar No. 11155400
     4421 Jim West Street
     Bellaire, Texas 77401
     713-668-4797
     713-668-4798-facsimile
     whynyet@sbcglobal.net
     Attorney for petitioner

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count for this petition for discretionary review, exclusive of appendix A and appendix B, is 3885 words.

/s/ James F. Keegan
James F. Keegan

## CERTIFICATE OF SERVICE

A copy of this petition for discretionary review was electronically served upon Philip Anthony Grant, District Attorney *pro tem*, Polk County, Texas, DAInfo@mctx.org, and upon The State Prosecuting Attorney, information@spa.texas.gov on this the 1st day of December, 2015.

/s/ James F. Keegan
James F. Keegan

APPENDIX A

Opinion issued August 25, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

NO. 01-13-00917-CR

———————————

**KEITH LADALE WILSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———————————

**On Appeal from the 411th District Court**
**Polk County, Texas[1]**
**Trial Court Case No. 22281**

———————————

## OPINION

---

[1]    The Supreme Court of Texas, pursuant to its docket equalization authority, transferred the appeal to this Court. *See* Misc. Docket No. 13–9152 (Tex. Oct. 17, 2013); TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer).

A jury found appellant, Keith Ladale Wilson, guilty of the offense of sexual assault,[2] and it assessed his punishment at confinement for fourteen years. In five issues, appellant contends that the evidence is insufficient to support his conviction and the trial court erred in admitting extraneous-offense evidence and sustaining the State's objections to certain portions of his trial counsel's closing argument.

We affirm.

## Background

The complainant testified that on May 28, 2010, when she was seventeen years old, she, her sister, and her friend, Kendall Alexander, drove to Livingston, Texas, to attend a party hosted by Caroline Hon. The complainant did not "have any intention of meeting a boy[,] . . . spending any time with a boy," or "finding a young man to make out with" at the party.

After arriving at Hon's house, the complainant, her sister, and Alexander went out to dinner with Hon. They then returned to the house to "get[] ready" for the party, and the complainant began drinking alcohol "around" 9:00 or 10:00 p.m. She explained that she did not "ha[ve] much experience with drinking alcohol" and could not remember how many drinks she had consumed that evening. She noted, however, that she "had a lot to drink," "she continu[ed] to drink," and "a lot of the night [was] kind of a blur" to her. At some point during the party, the complainant

---

[2] *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon 2011).

2

began to "feel unusual," "drunk," and "pretty intoxicated." She remembered spending some time outside Hon's house on the deck "drunk" and talking to her sister, Alexander, Hon, and Hon's brother.

The complainant explained that the next thing that she remembered was being upstairs in the game room, where she awoke to "a bunch of commotion" and "yelling," with "everyone freaking out." She noted that her sister, who was in the game room with her, was "crying and yelling." The complainant also noted that she was not wearing her pants or underwear, "still fe[lt] intoxicated" and "drunk," and was "having a hard time getting around." She subsequently went to a hospital for a sexual-assault examination, and during the examination, she continued to feel intoxicated.

The complainant further testified that she did not know appellant, had never met him before, did not see him the night of the party, and did not remember having any conversations with him at the party. She explained that she did not know how she "got up to the game room," "who took [her] up there," or "how long [she] w[as] up there." And she did not remember taking her clothes off, appellant "coming into the [game room]," or appellant "engaging in sexual conduct with [her]." Finally, the complainant stated that she did not consent to having sexual intercourse with appellant, did not want to have sexual intercourse with him, and

3

had she spoken to appellant at the party, she "would [have] remember[ed]" doing so.

The complainant's sister testified that during the party, the complainant began "exhibiting some signs of intoxication." And, while the complainant was intoxicated, she and appellant had a conversation. She noted that the complainant was "creeped out" by appellant, "got a weird vibe" from him, and was not interested in or attracted to him.

The complainant's sister further explained that the complainant was not "experienced with alcohol" and did not "seem to be handling her alcohol very well" during the party. She was "drunk and tired," had "slurred" and "slow[]" speech," and had "slower [motor] movements." After the complainant had become intoxicated "[v]ery quickly," she stopped "making any sense" and could not properly form words and sentences. She also stopped "mov[ing] normally" and had lost her coordination. Because of this, it was decided that the complainant should be taken "away from the party" to a "safer location" inside Hon's house.

The complainant was originally placed on a couch in the living room downstairs. Because the complainant was making "noises" and erratic "arm movements," and her sister believed that her level of intoxication was "severe" and "[e]xtreme," she was moved upstairs to a couch in the game room, where she would be further away from the party. The complainant, who was not able to assist

4

herself, had to be "lifted and carried" upstairs by her sister and others. According to her sister, the complainant had lost her physical coordination and did not appear to have any of her mental faculties. And the complainant did not respond when she was placed on the couch in the game room, was "[n]ot coherent at all," and was not conscious. When she last checked on the complainant during the party, the complainant was "[n]ot moving, not coherent, [and remained] still." And the complainant did not respond when her sister would enter the game room.

At some point later that evening, Robert James Austin, who had been staying at Hon's house, tried to enter the game room, but the door was locked. The complainant's sister, concerned by this, began "banging on the door." Hon's mother, Nancy Greer, was able to unlock the door, and when the door was opened, the complainant's sister "saw [appellant] on top of [the complainant]," who was laying on the couch with her arm "dangling off," "like, [it was] dead." According to the complainant's sister, appellant was "raping" and "having sexual intercourse with [the complainant]," who was unconscious, not moving, and not "participat[ing] in any way" in the sexual intercourse.

When the complainant's sister entered the game room, appellant, whose pants were around his ankles, "jumped off" the complainant. When he did this, the complainant did not move, communicate, or respond. Her sister shook the complainant, who awoke after "a while." However, after awakening, the

5

complainant still could not form coherent sentences and did not appear to know what was happening.

The complainant's sister subsequently called for emergency assistance, and she went to the hospital with the complainant. On the way to the hospital, the complainant still could not form sentences and did not appear to have her full physical capabilities. And even after they arrived at the hospital, the complainant still was not "fully aware of what [was] going on."

Austin testified that at some point during the party at Hon's house, he went upstairs to the game room, in which he had been staying, to retrieve his wallet and keys. When he entered, he saw the complainant "laying down on the couch," "passed out," and "asleep." Austin noted that she "had her clothes on" and did not react to any noise that he made while he was in the game room.

Austin then left Hon's house to go to a restaurant. When he returned, fifteen minutes later, he again went back upstairs to the game room to put his wallet and keys away, but found that the door to the game room was locked. Austin, noting that it was unusual for the game-room door to be locked, knocked on the door. After he received no response from the complainant, he went downstairs to tell the complainant's sister about the locked door. Subsequently, Austin heard screaming and shouting, and he ran back upstairs to the game room, where he found the complainant incoherent on the couch and her sister, Greer, and appellant. Austin

saw appellant pulling up his pants and that the complainant was not wearing any pants or underwear. He explained that even after the complainant started "coming to," she "didn't really know or comprehend what was going on," and she asked "[w]hat [had] happened."

Greer testified that during the party, she noticed that the complainant had become intoxicated and "had had too much to drink." Later, the complainant's sister came to get Greer to unlock the game-room door. When she and the complainant's sister entered the game room, she saw the complainant "laying on the couch asleep[] and [appellant] was on top of her." The complainant "was not moving at all." Greer explained that she saw the appellant's "rear end," which was not clothed, and he was engaging in sexual intercourse with the complainant, who was not clothed from the waist down, while she slept.

When Greer and the complainant's sister walked into the room, appellant "got up." Greer asked him, "What are you doing?" and he responded, "I don't know. I don't know." After pulling up his underwear, appellant then ran out of the room. During this event, the complainant did not move at all, and she was not conscious.

When Greer subsequently drove the complainant to the hospital, she did not "appear to have a good understanding of what had gone on" or "appear to comprehend the fact that she had just been sexually assaulted." However, Greer

7

further explained that the complainant did not appear to be intoxicated on the way to the hospital. Regardless, there was no doubt in Greer's mind that appellant "was sexually assaulting [the complainant] who was unconscious when [Greer] walked into the game room."

Hon testified that during the party she interacted with the complainant, saw her drinking, and noticed that she became suddenly intoxicated. The complainant began not "making sense" and "slurring" her words. Therefore, she, the complainant's sister, and Austin placed the complainant on a couch in the living room downstairs. Subsequently, she and the complainant's sister "carried" and "dragg[ed]" the complainant upstairs to the game room, "so [that] she could have her own room." Hon explained that the complainant did not walk up the stairs on her own; rather she was "dead weight." Once upstairs in the game room, they placed the complainant on the couch. Throughout this entire time, the complainant remained "unconscious."

Later in the evening, Hon heard screaming and ran upstairs. As she ran, she encountered appellant running downstairs. When Hon reached the game room, she saw the complainant's jeans and underwear on the floor and the complainant's sister trying to awake the complainant, who was "unconscious" and laying "still" on the couch. On the way to the hospital, the complainant "was in and out of it" and "didn't know what was going on."

8

Alexander testified that during the party, the complainant became "pretty intoxicated" and "passed out" on the living-room couch. Alexander further explained that the complainant was "passed out drunk," "basically unconscious," and she did not think that she would "have been able to wake [the complainant] up if [she] had tried." Thus, Hon and Alexander moved the complainant upstairs to the game room.

Alexander then went outside, where she had a conversation with appellant. She and appellant had "a normal conversation about life" and "talk[ed] about relationships." During this conversation, Alexander "mentioned" to appellant that her friend, the complainant, "had passed out inside [the house]" and "was upstairs." After Greer and the complainant's sister saw appellant engaging in sexual intercourse with the complainant, Alexander spoke to her, noting that she was "distraught, confused, crying, [and] upset." The complainant also did not appear to understand or comprehend what was happening, and according to Alexander, the complainant was not "looking to hook up with somebody" or "have sex with guys" at the party.

Cynthia Brittain, a medical laboratory technician at Memorial Medical Center Livingston ("MMCL"), testified that the complainant was admitted to the hospital on May 29, 2010. Brittain administered an alcohol test on the complainant's blood to determine its alcohol concentration, which was 0.11.

9

Sherry Keen, a sexual assault nurse examiner at MMCL, testified that she was trained to provide comprehensive care to sexual assault victims and collect forensic evidence. Keen performed a sexual-assault examination on the complainant. Although the complainant could not give Keen "any details about the sexual assault, Keen found "scratches" and "multiple lacerations," which appeared to be "fresh," around the complainant's anus. Keen explained that such trauma would be consistent with "someone scratching the anal region with fingernails as they were pulling underpants down from underneath a person that might be lying [down]." And although Keen did not find trauma to the complainant's vaginal region, this was consistent with "somebody who was unconscious and not resisting [a] sexual assault." Keen also collected forensic evidence from the complainant.

Camille Stafford, a forensic scientist and technical supervisor with the Texas Department of Public Safety ("TDPS") Breath Alcohol Laboratory in Houston, testified that she tested appellant's blood, taken from him on May 29, 2010, to determine its alcohol concentration. Appellant's blood had "less than 0.01 grams of alcohol per 100 milliliters of blood." Stafford also converted the alcohol concentration of the complainant's blood, which had been determined by the hospital through testing serum, and it was "0.093 grams" of alcohol per 100 milliliters of blood.

Angelina Temple, a forensic scientist with the TDPS Houston Regional Crime Lab, testified that she performed serology testing and DNA analysis in this case. She explained that the vaginal and anal swabs taken from the complainant contained both appellant's and the complainant's DNA.

Appellant testified that he went to the party at Hon's house on May 28, 2010, drank alcohol, and introduced himself to other guests. He explained that he did not know the complainant, her sister, or Alexander before the party, but saw them that night and introduced himself to them. Appellant had conversations with the complainant and Alexander, and he saw the complainant, her sister, and Alexander drinking at the party.

At one point in the evening, appellant went swimming. Prior to swimming, he took off his jeans and shirt in the game room, where he left them. Appellant swam for about "20 to 30 minutes," and about an hour later, he went back upstairs to the game room "[t]o change out of [the] shorts that [he] had [been] swimming in." In the game room, he found the complainant, alone, sitting on the couch, and he closed the door behind him. Prior to entering the room, however, appellant did not know that she was in the room.

After appellant entered the game room, he had a conversation with the complainant, who had "woke up crying" and "sniffing," with "tears running down her face." When he asked her, "Are you okay? What is wrong?," the complainant

told him that "she had had problems with her boyfriend" and he "had just called [her]." He and the complainant then engaged in sexual intercourse. Appellant explained, "It wasn't her saying, hey, let's have sex. It was we sat and talked; and then, one thing lead to another." According to appellant, the complainant consented to the sexual intercourse; she did not say "no" or "stop," "yell out for help," or "struggle." And the complainant was "conscious when [appellant] w[as] in the [game] room with her."

Appellant further testified that when the complainant's sister and Greer came into the game room, he "g[o]t off" of the complainant and "pulled up [his] underwear and . . . shorts." He then ran downstairs because he was "frightened" and "trying to get away from everything."

On cross-examination, appellant admitted that he had previously told law enforcement officers that he had no recollection of what had happened in the game room. He also explained that he had "accident[ally]" locked the game-room door and did not respond to the people who were banging on the door. According to appellant, the complainant "fak[ed]" or "pretended to be unconscious" when the others came into the game room, but she was not unconscious when they engaged in sexual intercourse.

To rebut appellant's testimony on the issues of intent and consent, the State presented evidence of an extraneous offense. Before admitting the extraneous-

12

offense evidence, the trial court instructed the jury: "[Y]ou may only consider such evidence as evidence of intent or to refute the defensive theory of consent and you may not consider those other offenses, wrongs or acts, if any, for any other purpose."[3]

The extraneous-offense witness then testified that on December 25, 2011, she engaged in a "text message conversation" with Josh Hooper regarding having "sex . . . for money." She explained that Hooper requested that she have sexual intercourse with him and appellant for money; however, she agreed only to have sexual intercourse with Hooper for $100. In his car, Hooper subsequently drove the witness to a wooded area, where he told her that they were "alone." After Hooper gave the witness $50, she began performing "oral sex" on him in the front seat of the car. At some point, the witness thought she heard the sound of "something or somebody in the backseat moving around," but she did not see anything.

Hooper and the witness then engaged in sexual intercourse, with him standing behind her outside of the car. The witness heard a "commotion" and "realize[d] that someone else had come [up] behind [her]." A second man then engaged in sexual intercourse with her. When the witness looked behind to see him, she saw that it was appellant. She then told appellant to stop, which he

---

[3]    The trial court gave the jury the same instruction in its charge.

13

eventually did. Hooper then asked, "Where did [appellant] go? Where did he go?" The witness explained that, although she had consented to having sexual intercourse with Hooper, she did not consent to having sexual intercourse with appellant, whom she told to stop "numerous times."

Jenny Smith, a registered nurse at Memorial Medical Center, testified that she is a certified "SANE examiner" and performed a sexual-assault examination of the extraneous-offense witness. During the examination, Smith found trauma, which was consistent with the witness's description of an "aggressive" sexual assault with "[m]ultiple assailants."

In response to the rebuttal evidence, appellant testified that he was not with the extraneous-offense witness on December 25, 2011 and did not know anything about the incident.

### Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is insufficient to support his conviction because the State did not "prove beyond a reasonable doubt that [he] caused the penetration of the sexual organ of [the complainant] with his sexual organ, *without her effective consent*."

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

A person commits the offense of sexual assault if he, intentionally or knowingly, causes the penetration of the sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (Vernon 2011). A sexual assault is without consent if "the other person has not consented and the actor knows [that] the other person is unconscious or physically unable to resist" or "the other person has not consented and the actor knows [that] the other person is unaware that the sexual assault is occurring." *Id.* § 22.011(b)(3), (5). Evidence that the complainant was unconscious due to voluntary intoxication is sufficient to prove lack of consent. *See Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993).

15

Here, appellant admits to having engaged in sexual intercourse with the complainant, but disputes that he did so without her consent. Appellant asserts that the State did not establish that he "knew [the complainant] was unconscious or physically unable to resist, or that . . . [he] knew [the complainant] was unaware that the sexual assault was occurring."

The complainant testified that she began drinking alcohol "around" 9:00 or 10:00 p.m., "had a lot to drink," and "continu[ed] to drink" throughout night of the party. And at a certain point, she began to "feel unusual," "drunk," and "pretty intoxicated." When she later awoke in the game room, she was no longer wearing her pants and underwear, "still fe[lt] intoxicated" and "drunk," and had difficulty moving around on her own. The complainant explained that she did not remember taking her clothes off, did not consent to having sexual intercourse with appellant, and did not want to have sexual intercourse with appellant.

Other witnesses, including the complainant's sister, Greer, Hon, and Alexander, testified that during the party, the complainant drank alcohol, became intoxicated, and did not "handl[e] her alcohol very well." According to these witnesses, the complainant was "drunk," had "slurred" and "slow[] speech," "slow[] [motor] movements," could not properly form words or sentences, and was not "making any sense." Her sister described the complainant's level of

intoxication as "severe" and "[e]xtreme." And Greer testified that the complainant "had had too much to drink."

At one point during the evening, Hon and the complainant's sister carried the complainant upstairs to the game room and placed her on the couch. The complainant could not physically assist them in any way as she was carried and "dragg[ed]" up the stairs, and Hon described her as "dead weight." At this time, the complainant was "[n]ot coherent at all," was "unconscious," and did not appear to have any of her mental faculties. When her sister checked on the complainant later in the evening, she was still "[n]ot moving, not coherent, [and remained] still." Austin also testified that when he went into the game room to retrieve his belongings, he saw the complainant "laying down on the couch," "passed out," and "asleep."

When the complainant's sister and Greer found appellant on top of the complainant in the game room, the complainant was laying on the couch, with her arm "dangling off," "like, [it was] dead." As Greer explained, the complainant was "laying on the couch asleep[]" with appellant "on top of her." The complainant, who was not wearing pants or underwear, "was not moving at all," not "participat[ing] in any way" in the sexual intercourse, and was unconscious. When appellant "jumped off" the complainant, she remained still, did not communicate, and did not respond. Her sister had to shake the complainant to wake her up,

17

which took "a while." When Hon subsequently entered the game room, the complainant was "still unconscious" on the couch.

Moreover, the complainant's sister testified that earlier during the party, the complainant, while intoxicated, had a conversation with appellant, was "creeped out" by him, and "got a weird vibe" from him. And Alexander testified that when she spoke with appellant prior to the sexual assault, she specifically told him that the complainant "had passed out inside [the house]" and "was upstairs" in the game room.

Finally, Keen testified that when she examined the complainant, she found, around the complainant's anus, "scratches" and "multiple lacerations," which would be consistent with "someone scratching the anal region with fingernails as they were pulling underpants down from underneath a person that might be lying [down]." Keen also noted that the complainant had no trauma to her vaginal region, which was consistent with a situation where "somebody who was unconscious and not resisting [a] sexual assault." Additionally, Stafford testified that the complainant's blood had "0.093 grams" of alcohol per 100 milliliters.

Appellant argues that because only he and the complainant were in the game room at the time he had sexual intercourse with her, the complainant could not remember what happened, and he "specifically and unambiguously testified that he and [the complainant] engaged in consensual sexual intercourse," the State could

18

not prove her lack of consent. However, the fact that the complainant did not remember the sexual assault is not dispositive of the issue of consent. *See, e.g., Ray v. State*, No. 03-13-00085-CR, 2014 WL 4362969, at *2–4 (Tex. App.—Austin Aug. 26, 2014, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support sexual assault conviction where complainant "very intoxicated," "passed out," and awoke "naked from the waist down"); *In re E.I.G.*, 346 S.W.3d 644, 645–47 (Tex. App.—El Paso 2009, no pet.) (holding evidence sufficient to support sexual assault conviction where complainant, who "was only wearing her blouse" when she awoke, did not remember "if the male in the room with her did anything," but "[a]ppellant was seen on top of an unconscious [complainant], and jumped off her when someone entered . . . the room"); *Everson v. State*, No. 01-07-00510-CR, 2008 WL 2548843, at *3–6 (Tex. App.—Houston [1st Dist.] June 26, 2008, pet. ref'd) (mem. op., not designated for publication) (upholding sexual assault conviction where complainant "became voluntarily intoxicated by taking pills and passed out[] [and] remained unconscious throughout the sexual intercourse"); *see also Elliott*, 858 S.W.2d at 485 (evidence complainant unconscious due to voluntary intoxication sufficient to prove lack of consent). And the complainant's testimony that she did not consent to engaging in sexual intercourse with appellant is sufficient, by itself, to establish a lack of

19

consent. *See Everson*, 2008 WL 2548843, at *4; *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Further, from the evidence presented at trial, one reasonably could infer that appellant knew that the complainant was unconscious, physically unable to resist, or was unaware that he was engaging in sexual intercourse with her, and thus, also knew that she did not consent. *See Hughes v. State*, 194 S.W.3d 649, 654 (Tex. App.—Tyler 2006, no pet.) (concluding jury could infer defendant knew he did not have complainant's consent because he began sexually assaulting her while she slept); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789 (jury's task to draw "reasonable inferences" from evidence).

Moreover, to the extent that there is any discrepancy between appellant's testimony and the testimony of the complainant and the other witnesses, we note that the jury was the sole judge of the credibility of the witnesses at trial, and we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2789, 2793; *Williams*, 235 S.W.3d at 750; *see also Hernandez v. State*, 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) ("[T]he jury had the ability to observe the witnesses carefully, . . . and to evaluate the credibility of each witness and the overall sufficiency of the evidence on the issue of consent.").

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that it could have found beyond a reasonable doubt that the complainant did not consent to the penetration of her sexual organ by appellant. Accordingly, we hold that the evidence is sufficient to support appellant's conviction.

We overrule appellant's first issue.

### Extraneous Offense Evidence

In his second issue, appellant argues that the trial court erred in "allowing the State to present evidence of an extraneous sexual assault alleged to have been committed [by appellant] after the alleged sexual assault" of the complainant because such evidence was inadmissible and should have been excluded.

We review a trial court's ruling on the admissibility of extraneous offenses for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). We will not reverse a trial court's ruling on evidentiary matters unless the decision was outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If the trial court's ruling can be justified on any theory of law applicable to the ruling, the ruling will not be disturbed. *De La Paz*, 279 S.W.3d at 344. "When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

The admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character is prohibited. TEX. R. EVID. 404(b). Evidence of extraneous offenses may, however, be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*; *see also Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). And evidence of extraneous acts may also be admissible to rebut defensive theories. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). Nevertheless, even when the admission of extraneous evidence is permissible under rule 404(b), such evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Blackwell v. State*, 193 S.W.3d 1, 9 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

In addition to determining whether the trial court abused its discretion in admitting the extraneous-offense evidence, we must also engage in a harm analysis. *See* TEX. R. APP. P. 44.2(b); *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "Error in the admission of evidence is non-constitutional error," and we disregard any non-constitutional error that does not affect a defendant's substantial rights. *See* TEX. R APP. P. 44.2(b); *Jabari*, 273 S.W.3d at 754; *see also Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). "A substantial right is affected when the error had a substantial and

22

injurious effect or influence in determining the jury's verdict." *Jabari*, 273 S.W.3d at 754 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)); *see also* TEX. R. APP. P. 44.2(b). We should not reverse a conviction for non-constitutional error if, after examining the record as whole, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Jabari*, 273 S.W.3d at 754 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

In making this determination, we consider the entire record, including any testimony and physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). The weight of evidence of the defendant's guilt is also relevant in conducting the harm analysis under rule 44.2(b). *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008); *Motilla*, 78 S.W.3d at 356–57; *Kamen v. State*, 305 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). And we may consider the closing statements and voir dire, jury instructions, the State's theory, any defensive theories, and whether the State emphasized the alleged error. *Motilla*, 78 S.W.3d at 355–56; *Hankins v. State*, 180 S.W.3d 177, 182 (Tex. App.—Austin 2005, pet. ref'd).

23

Here, we do not address whether the trial court erred in admitting the complained-of extraneous-offense evidence because even were we to conclude that the trial court erred in admitting such evidence, appellant, in his brief, does not argue that he was harmed by its admission. In order to assert an issue on appeal, an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities." TEX. R. APP. P. 38.1(i). And an appellant waives an issue on appeal if he does not adequately brief that issue, i.e., by presenting supporting arguments and authorities. *See id.*; *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000). Because appellant has not adequately briefed his extraneous-offense issue by identifying the harm that he suffered as a result of the admission of the complained-of evidence, we hold that he has waived the issue. *See Cardenas*, 30 S.W.3d at 393 (holding issue inadequately briefed where "appellant d[id] not address the question of whether the alleged error . . . was harmless"); *see also Sierra v. State*, 157 S.W.3d 52, 64 (Tex. App.— Fort Worth 2004) (holding issue of whether testimony was unfairly prejudicial under rule 403 inadequately briefed where "appellant failed to show how he was harmed by the testimony"), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007); *Allison v. State*, Nos. 01-01-00383-CR, 01-01-00384-CR, 01-01-00385-CR, 01-01-00386-CR, 2002 WL 31388717, at *3 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, pet. ref'd) (not designated for publication) (determining defendant waived complaint

24

where brief "offer[ed] no further analysis, legal authorities, or record references . . . to explain how he was harmed by the alleged error"); *Fremin v. State*, No. 14-01-00571-CR, 2002 WL 1315912, at *3 (Tex. App.—Houston [14th Dist.] June 6, 2002, no pet.) (not designated for publication) (concluding issue of whether extraneous act erroneously admitted waived, where "appellant's brief identifie[d] no evidence of harm").

We overrule appellant's second issue.

## Closing Argument

In his third and fourth issues, appellant argues that the trial court erred in "sustaining [the] objection[s] by the State to [his] [closing] argument . . . regarding [the] testimony of [L]ieutenant Ken Bohnert" and Austin because his trial counsel's argument "was an accurate summary of th[eir] testimony."

The following exchange took place during appellant's closing argument:

| [Appellant's Trial Counsel]: | Lieutenant Bohnert testified that Nancy Greer told him in a statement in June that she didn't think -- that she did not think that [the complainant] was intoxicated. |
| --- | --- |
| [The State]: | I'm going to object, Your Honor. That's a misstatement of the evidence. |
| The Court: | Sustained. |
| [Appellant's Trial Counsel]: | It's -- |
| The Court: | I sustained the objection. |

25

| | |
|---|---|
| [Appellant's Trial Counsel]: | Lieutenant Bohnert testified that she -- that Nancy Greer said that she thought [the complainant] was asleep. She thought [the complainant] had been doing something that day.<br><br>And Robert James Austin testified that when he saw [the complainant] that night, she was not intoxicated. |
| [The State]: | I'm going to object. That's a misstatement of the evidence. |
| [Appellant's Trial Counsel]: | Your Honor, that's a flat-out statement of the evidence. If the jury heard it differently, they can consider it. |
| The Court: | I sustain the objection and ask you to stick to the record. |

Appellant asserts that the above statements of his counsel constituted "an accurate summary of [Lieutenant Bohnert's and Austin's] testimony." In response, the State asserts that any error by the trial court in sustaining its objections to the above argument was harmless.

A trial court has broad discretion in controlling the scope of closing argument, but it may not prevent defense counsel from making a point essential to the defense. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.). A defendant has the legal right to argue any theory supported by the evidence, and all inferences from the evidence that are legal, fair, and legitimate

26

may be argued by the defense. *Lemos*, 130 S.W.3d at 892; *Melendez v. State*, 4 S.W.3d 437, 442 (Tex. App.—Houston [1st Dist.] 1999, no pet.), *overruled on other grounds by Small v. State*, 23 S.W.3d 549 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Prohibiting counsel from making a particular jury argument constitutes a denial of the defendant's right to counsel when that argument is one the defendant is entitled to make. *Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980); *Lemos*, 130 S.W.3d at 892.

Assuming, without deciding, that the trial court erred in sustaining the State's objections noted above, we must determine whether the error was harmful. *See* TEX. R. APP. P. 44.2(a). Denial of the right to counsel is an error of constitutional magnitude. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *United States v. DeLoach*, 504 F.2d 185, 189–90 (D.C. Cir. 1974) (holding restrictions on defendant's closing argument violated constitutional right to counsel). Accordingly, because any error by the trial court in sustaining the State's objections would be constitutional, we must determine whether the trial court's actions were harmless beyond a reasonable doubt. TEX. R. APP. P. 44.2(a); *see also Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997); *Cantu v. State*, 395 S.W.3d 202, 210–11 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In applying the "harmless error" test, the primary question is whether there is a

"reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

We note that our harmless error analysis does not focus on the propriety of the outcome of the trial, but instead, we "calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We are required to evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Cantu*, 395 S.W.3d at 211. We consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011); *Cantu*, 395 S.W.3d at 211. However, these factors are not exclusive; other considerations may logically inform our harm analysis. *Cantu*, 395 S.W.3d at 211. As the Texas Court of Criminal Appeals has emphasized: "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden*, 353 S.W.3d at 822 (alteration in original).

Here, the State made its objections after appellant's trial counsel made his argument to the jury regarding the testimony of Lieutenant Bohnert and Austin. And the trial court merely sustained the State's objections; it did not instruct the jury to disregard the argument. *See Requeno-Portillo v. State*, No. 01-10-00242-CR, 2011 WL 3820747, at *4–5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. ref'd) (mem. op., not designated for publication) (holding error in sustaining objection to defense counsel's argument harmless where objection not made until after counsel had already made argument to jury and trial court did not instruct jury to disregard); *Wiltz v. State*, 827 S.W.2d 372, 373–74 (Tex. App.—Houston [1st Dist.] 1992) (same), *rev'd on other grounds,* 863 S.W.2d 463 (Tex. Crim. App. 1993); *see also Rische v. State*, 746 S.W.2d 287, 291 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (noting court did not instruct jury to disregard defense argument). Accordingly, we hold that any error committed by the trial court in sustaining the State's objections to the pertinent portions of the closing argument of appellant's trial counsel was harmless.

We overrule appellant's third and fourth issues.

### Comment on the Weight of the Evidence

In his fifth issue, appellant argues that the trial court erred in "directing . . . [appellant's trial counsel] to '*stick to the record*' during [closing] argument" because, by doing so, the trial court "suggested to the jury" that

29

appellant "had not . . . been sticking to the record" and "was engaging in deceit." (Emphasis added.) In response, the State argues that appellant "failed to preserve this point of error for review" because he "never objected that [the trial court's] comment was an improper comment on the weight of the evidence."

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979). "To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party." *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.— Houston [14th Dist.] 2007, pet. ref'd).

Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial. *See* TEX. R. APP. P. 33.1(a); *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013). When no objection is made, "remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous," i.e., the error creates egregious harm. *See Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.); *see also Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A trial court's comments do not constitute fundamental error unless they rise to "such a

30

level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (trial court's comments correcting defense counsel's misrepresentation of previously admitted testimony, showing irritation at defense attorney, and clearing up point of confusion not fundamental error).

Here, appellant complains that during his closing argument, the trial court, in regard to the State's objection that he was "misstat[ing]" the evidence, remarked: "I sustain the objection and *ask you to stick to the record*." (Emphasis added.) Notably though, appellant did not object to this statement by the trial court. *See* TEX. R. APP. P. 33.1(a). Further, appellant does not argue, nor can we reasonably conclude, that the trial court's request that appellant's trial counsel "stick to the record" constitutes fundamental error, which would negate the need for an objection. *See Goforth v. State*, No. 03-02-00487-CR, 2003 WL 21354498, at *5–6 (Tex. App.—Austin June 12, 2003, no pet.) (mem. op., not designated for publication) (holding trial court's instruction to defendant to "[s]tick within the evidence that has been presented, during [his] argument" "not a comment on the weight of the evidence, nor did [it] result in a benefit to the State or prejudice or harm appellant's right to a fair and impartial trial"); *see also Jasper*, 61 S.W.3d at 421 ("[A] trial judge's irritation at the defense attorney does not translate to an indication as to the judge's views about the defendant's guilt or innocence."); *Tate*

*v. State*, No. 01-13-00290-CR, 2014 WL 1678811, at *6–7 (Tex. App.—Houston [1st Dist.] Apr. 24, 2014, pet. ref'd) (mem. op., not designated for publication) (trial court's expression of irritation with defense counsel not fundamental error).

We overrule appellant's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Justice Huddle, concurring.

Publish.   Tex. R. App. P. 47.2(b).

APPENDIX B



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-13-00917-CR

---

### KEITH LADALE WILSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

On Appeal from the 411th District Court
Polk County, Texas
Trial Court Case No. 22281

---

## CONCURRING OPINION

I concur in the Court's judgment and join its opinion except with respect to its analysis of Appellant Keith Wilson's second issue. I disagree with the majority's conclusion that Wilson waived his challenge to the trial court's admission of extraneous-offense evidence due to inadequate briefing. I would

address the merits of Wilson's extraneous-offense-evidence issue and hold that the trial court did not abuse its discretion in admitting the complained-of evidence.

### *Wilson didn't waive*

In his second issue, Wilson argues that the trial court abused its discretion in admitting the testimony of a then-18-year-old woman who alleged that Wilson sexually assaulted her after the incident for which Wilson was on trial. In particular, Wilson argues that the extraneous-offense evidence should have been excluded because the facts and circumstances of the extraneous offense "were too dissimilar from those of the offense for which Wilson was on trial."

Wilson's 10,911-word brief devotes multiple pages to the extraneous offense issue. While his discussion of how the admission of this evidence harmed him is admittedly brief—and that is partly because it refers to and incorporates the brief's earlier summary of the guilt/innocence-phase evidence—it does include a zinger on harm: Wilson's previous trial, at which the extraneous offense evidence was not admitted, ended in a hung jury.

The State did not even argue in its brief that Wilson had waived the issue by inadequate briefing. Nevertheless, the majority faults Wilson for his failure to "argue that he was harmed" by the admission of extraneous-offense testimony. While Wilson certainly could have made more hay about harm, the Court of Criminal Appeals has made clear that "no burden to show harm should be placed

on the defendant who appeals." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (citing *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000)). Complete yet cogent briefing is ideal, but appellate courts should not find briefing waiver just because that high standard is not met. *See State v. Copeland*, No. PD-1802-13, 2014 WL 5508985, at *6 (Tex. Crim. App. Oct. 22, 2014) ("Briefing rules are to be construed liberally, and substantial compliance with the Texas Rules of Appellate Procedure is sufficient to avoid waiving the right to appeal an issue."). Rather, it is the duty of the reviewing court to assess harm from the context of the error. *Johnson*, 43 S.W.3d at 4; *Ovalle,* 13 S.W.3d at 787–88. The majority thus erred in concluding that Wilson waived his issue by failing to "argue that he was harmed." It should have reached the merits of Wilson's complaint.

### *The trial court did not abuse its discretion in admitting the extraneous offense evidence*

Texas Rule of Evidence 404(b)(1) prohibits the admission of extraneous offense evidence to prove a person's character to show that the person acted in conformity with that character. TEX. R. EVID. 404(b)(1). However, extraneous offenses may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.* 404(b)(2); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1991). And evidence of extraneous acts may also be admissible to rebut defensive theories. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).

3

In the prosecution for sexual assault of an adult, the State must prove that the defendant engaged in the conduct intentionally and knowingly without the complainant's consent. By raising the defensive theory of consent, the defendant necessarily disputes his intent to engage in the alleged conduct without the complainant's consent and thereby places his intent at issue. *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980); *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.).

Here, the State offered evidence of the extraneous sexual assault to prove intent and rebut Wilson's defensive theory that the complainant consented to sexual intercourse. Wilson argues that the evidence of the extraneous offense is inadmissible under Rule 404(b) because the offense is not similar enough to the sexual assault of the complainant to be used to "rebut[] [appellant's] defensive theory of consent, or [to] show[] his intent of having sex with an unconscious, non-consenting woman." I disagree.

The extraneous offense witness testified that Wilson penetrated her from behind, without her consent, while she was facing forward and believed that she was engaging in sexual intercourse with a different man. She also testified that she had not been aware of Wilson's presence nearby until after she realized that Wilson was penetrating her. Wilson had hidden. The circumstances in the charged offense were not identical. The complainant was unaware of Wilson's presence in

4

the room in which she was sleeping due to her intoxication, not Wilson's hiding. But the gist of both incidents was the same: Wilson sexually assaulted a woman who was not aware of his presence until after the sexual assault. *See Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987) (degree of similarity required between charged and extraneous offense is not as great when intent, as opposed to identity, is material issue); *Brown*, 96 S.W.3d at 512–13 (when defensive theory of consent raised in prosecution for sexual assault, intent is material issue, and degree of similarity required between charged and extraneous offense need not be as great as when identity is material issue); *see, e.g.*, *Brown v. State*, No. 01-11-00462-CR, 2012 WL 1893700, at *4 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op., not designated for publication) (finding extraneous offenses sufficiently similar where each sexual assault victim testified she did not consent and defendant threatened her, despite assaults occurring in different locations and involving different acts); *MacKenzie v. State*, No. 03-05-00731-CR, 2006 WL 3923608, at *3 (Tex. App.—Austin Jan. 22, 2006, pet. ref'd) (mem. op., not designated for publication) (finding extraneous offense sufficiently similar where "[i]n both incidents, the women deny consenting or even being aware of [defendant's] presence before awakening to discover the sexual activity in progress"). Accordingly, I would hold that there is sufficient similarity between the extraneous offense and the charged offense to render the extraneous offense

5

evidence probative of Wilson's intent and therefore not inadmissible under Rule 404(b).

I would further hold that, considering the relevant factors, the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of its unfair prejudice. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005) (identifying factors). A proper Rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *See id.*

First, Wilson testified that the complainant consented, and the complainant swore the opposite was true. Consent was thus the central issue at trial and evidence tending to prove the absence of consent would be quite probative. *See, e.g., Dilg v. State*, No. 07-13-00160-CR, 2014 WL 458019, at *4 (Tex. App.—Amarillo Jan. 29, 2014, no pet.) (mem. op., not designated for publication) (noting probative value of extraneous offense evidence when "he said, she said" situation exists and consent is pivotal issue at trial).

Second, while the extraneous offense evidence was charged by its very nature, the trial court correctly instructed the jury that it "may only consider such evidence as evidence of intent or to refute the defensive theory of consent" and may not consider such evidence "for any other purpose." The charge included a

6

similar limiting instruction, minimizing the likelihood that the jury would use the extraneous offense evidence improperly. *See Blackwell v. State*, 193 S.W.3d 1, 15 (Tex. App. —Houston [1st Dist.] 2006, pet. ref'd) ("The trial court's instructions to the jury are a factor to consider in determining whether the jury considered the extraneous-offense evidence improperly . . . .").

The last two factors also weigh in favor of admissibility. The State did not spend an inordinate amount of time presenting the extraneous-offense evidence. Roughly 55 pages of approximately 515 pages (or about 11 percent) of the testimony during the trial's guilt/innocence phase related to the extraneous offense. *See Rickerson v. State*, 138 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (noting "[o]ut of a 289-page reporter's record, th[e] testimony took up twenty-three pages"). And Wilson defended on the theory that the complainant consented to engaging in sexual intercourse, making the State's need for the extraneous offense evidence considerable. Considering all of these factors, the trial court correctly overruled Wilson's Rule 403 objection. The trial court's admission of the extraneous-offense evidence was not an abuse of discretion.

## Conclusion

The majority incorrectly finds briefing waiver and fails to address the merits of Wilson's issue regarding the admissibility of the extraneous offense evidence. But, having considered the issue on the merits, I conclude that the trial court did

7

not abuse its discretion in admitting the complained-of extraneous-offense evidence. Accordingly, I respectfully concur.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Huddle, J. concurring.

Publish. TEX. R. APP. P. 47.2(b).